IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TELLY BRIGGS,<br><br>      Plaintiff,<br><br>vs.<br><br>DANIEL MORALES, in his individual and official capacity, RYAN WISNIESKI, in his individual and official capacity, CHAD OSTMEYER, in his individual and official capacity, and CITY OF IMPERIAL, NEBRASKA, a Political Subdivision of the State of Nebraska,<br><br>      Defendants. | 7:19-CV-5012<br><br>MEMORANDUM AND ORDER |

   The plaintiff, Telly Briggs, brings this action, alleging in his amended complaint civil rights violations pursuant to 42 U.S.C. § 1983 for false arrest, use of excessive force, refusal of access to counsel, interference with a civil child custody matter, and conspiracy to violate the plaintiff's civil rights, as well as a claim that the City failed to train or supervise its law enforcement officers. The individual defendants, Daniel Morales, Ryan Wisnieski, and Chad Ostmeyer are City of Imperial police officers. The individual defendants have moved to dismiss most, but not all, of the plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6). Filing 9. For the reasons that follow, the Court will grant the defendants' motion in part and deny it in part.

I. STANDARD OF REVIEW

   To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth a short and plain statement of the claim showing that the pleader is entitled

to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). For the purposes of a motion to dismiss a court must take all the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See Twombly*, 550 U.S. at 545. The court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

## II. BACKGROUND

The plaintiff and Shaina Musick have a son, born in 2011. Filing 7 at 5. The plaintiff and Musick's relationship came to an end, and later, a temporary custody order was entered giving physical custody of their son to Musick. The plaintiff was allowed parenting time with his son every other weekend. *Id.* The plaintiff alleges that his parenting relationship with Musick has been contentious, and they often disagreed about the plaintiff's rights regarding information concerning their son's health and well-being. *Id.* The plaintiff alleges that Imperial city police officers regularly oversee the exchange when he picks up his son. On these occasions, the officers attempt to harass and intimidate the plaintiff by standing close to him and exhibit a menacing demeanor, tap their gun holsters, and otherwise attempt to needlessly escalate a difficult situation. *Id.* The plaintiff alleges that at some point, Musick began dating defendant Chad Ostmeyer, who is an Imperial police department

2

sergeant (filing 7 at 4), and that Musick was dating Ostmeyer when the subsequent events unfolded that resulted in the plaintiff's arrest. Filing 7 at 9.

The plaintiff and Musick's custody dispute was set for trial in late January 2016. On January 2, the plaintiff arrived to pick up his son for his regularly scheduled parenting time. Filing 7 at 5. Musick handed him a bag of pills and told him that their son had strep throat. According to the plaintiff, his son was sick the entire weekend, coughing violently and vomiting in bed. Id. When the plaintiff returned his son to Musick, they argued about the plaintiff's right to be informed about his son's physical well-being. Filing 7 at 6.

Over the course of the next two days, the plaintiff made multiple telephone calls to Musick, all of which went unanswered, to see how his son was doing. Id. On January 6, the plaintiff attempted to confront Musick in person to see how his son was doing. He found Musick at her friend's house and tried to catch Musick's attention as she backed out of her friend's driveway. Id. Musick did not stop, no words were exchanged, and according to the plaintiff, Musick was smiling as she drove away. Id. The plaintiff left and returned home.

A few hours later, the plaintiff heard a knock on his door. Id. The plaintiff had recently been threatened by a former friend that he and a trained mixed-martial arts fighter were going to come to the plaintiff's house and "light-up" the plaintiff and his roommate. Id. Not expecting anyone, and not knowing who was knocking, the plaintiff picked up a shotgun before opening his door. Filing 7 at 6-7. When he opened the door, the plaintiff saw defendant Daniel Morales. Filing 7 at 7. Morales was an Imperial city police officer-in-training, filing 7 at 3, and was in full uniform, filing 7 at 7. When Morales saw the plaintiff's shotgun, he immediately drew his service weapon and began yelling for the

3

plaintiff to put the shotgun down, which the plaintiff did. *Id.* Morales then ordered the plaintiff out of his house and down the front steps. Upon reaching his bottom step, Morales order the plaintiff to both "get down on the ground" and to "take a seat." When the plaintiff attempted to sit down on his front steps, Morales grabbed him, threw him to the ground and placed his knee in the plaintiff's back. *Id.* The plaintiff was recovering from a recent back surgery to repair a herniated disc. *Id.*

The plaintiff asked Morales who he was and why he was at the plaintiff's house, but Morales did not respond to the plaintiff's questions. Filing 7 at 8. Instead, after pinning the plaintiff to the ground, Morales started asking the plaintiff questions about his earlier encounter with Musick. *Id.* Morales handcuffed the plaintiff and told him he was under arrest for disturbing the peace of Musick earlier that day. *Id.* Morales pulled the plaintiff up after handcuffing him, jerked down on the handcuffs causing injury to the plaintiff's wrists, and threw the plaintiff onto the hood of Morales' police cruiser. Filing 7 at 9.

The plaintiff alleged that before going to the plaintiff's house, Morales met with Ostmeyer and Musick, and that Ostmeyer directed the investigation, arrest, and subsequent filing of charges against the plaintiff. *Id.* Morales claimed that probable cause for the plaintiff's arrest came from Musick's complaint, and that Morales went to the plaintiff's house intending to arrest him. *Id.* The plaintiff was charged with disturbing the peace, terroristic threats, and the use of a deadly weapon to commit a felony, all in connection with Musick's complaint and his encounter with Morales. He was found not guilty of all charges. Filing 9 at 10. The plaintiff was, however, convicted of assault on an officer, obstructing a police officer, and two counts of criminal

4

mischief for conduct occurring after and apart from his encounters with Musick and Morales. *Id.*

The plaintiff's amended complaint asserts six claims for relief pursuant to 42 U.S.C. § 1983.

Count 1:   Unlawful arrest and imprisonment in violation of the Fourth Amendment, and conspiracy.
Count 2:   Excessive use of force in violation of the Fourth Amendment and conspiracy.
Count 3:   Municipal liability regarding the failure to train or supervise its police officers, resulting in the violation of the plaintiff's Fourth Amendment rights.
Count 4:   Refusal of access to counsel in violation of Fifth, Sixth, and Fourteenth Amendments.
Count 5:   Municipal liability regarding intentional interference with the plaintiff's civil child custody matter in violation of the plaintiff's substantive due process rights.
Count 6:   Municipal liability for engaging in a scheme that offends any sense of justice in violation of the plaintiff's due process rights.

### III. DISCUSSION

#### 1. CLAIMS IN COUNTS 1, 3, & 6.

The defendants assert that the plaintiff's claims in Counts 1, 3, and 6 are barred pursuant to the rule in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which provides:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,

5

a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. . . . Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

The defendants argue that because the plaintiff was convicted of certain charges, and those convictions have not been reversed, or otherwise pardoned or expunged, the plaintiff's § 1983 claims regarding the charges for which he was acquitted are not cognizable and must be dismissed. Filing 10 at 5-7. The defendants argue that success in the plaintiff's § 1983 action regarding the charges on which he was acquitted would necessarily imply the invalidity of his existing convictions on other charges. The defendants' argument is fourfold, and essentially relies on the premise that the acquitted and convicted charges all stem from the same occurrence. The four factors the defendants point to are: (1) all charges were filed in the same prosecution; (2) the plaintiff alleged that conduct which resulted in the convictions would not have occurred but for the unlawful arrest; (3) the plaintiff's damage claim includes the cost of defending the charges on which he was convicted; and, (4) the plaintiff is

6

currently seeking post-conviction relief for his convictions. Filing 10 at 6-7. The Court finds that the defendants' arguments lack merit. The following decisions illustrate why.

In *Moore v. Sims*, the plaintiff was taken into custody and transported to a detoxification center. 200 F.3d 1170, 1171 (8th Cir. 2000). There, he was made to empty his pockets and a substance later determined to be cocaine was discovered. The plaintiff, however, claimed the cocaine was planted by the police. *Id.* The plaintiff was given a breathalyzer test, which showed that he was not intoxicated, but because of the cocaine, he was taken to county jail and charged with possession of a controlled substance—to which he later pled no contest. *Id.* The plaintiff filed an action under § 1983, alleging that he was unlawfully seized, and that drug evidence was planted. The Court of Appeals held that the plaintiff's unlawful seizure claim was not barred by the *Heck* rule because his unlawful seizure claim did not necessarily imply the invalidity of his drug-possession conviction. However, the plaintiff's claim that the cocaine was planted by law enforcement did imply that his drug-possession conviction was invalid, and thus barred by the rule in *Heck*. *Id.* at 1172.

In *Shultz v. Buchanan*, the plaintiff was arrested in his home and charged with resisting arrest, fleeing, and disorderly conduct. 829 F.3d 943, 948 (8th Cir. 2016). The plaintiff eventually pled no contest to public intoxication, and the prosecution declined to pursue the other charges. *Id.* The plaintiff then brought an action pursuant to § 1983, alleging unlawful entry into his home and the use of excessive force. *Id.* at 946. The Court of Appeals held that the plaintiff's unlawful entry claim was not barred pursuant to the rule in *Heck*, because success on the plaintiff's unlawful entry claim would not demonstrate the invalidity of his conviction for public intoxication. *Id.* at 949.

7

As the decisions above illustrate, the fact that the criminal charges the plaintiff faced were all filed in the same prosecution is irrelevant. What is relevant is whether success on the plaintiff's § 1983 claims regarding the conduct associated with the charges upon which he was acquitted, would demonstrate the invalidity of the charges for which he was convicted. The plaintiff's allegation that his later convictions would not have happened but for his unlawful arrest may possibly be an element of the plaintiff's damages but does not imply that the later convictions are invalid. Similarly, the allegation regarding the plaintiff's attorney fees, and that such fees are associated with defending all charged offenses, may possibly represent an element of the plaintiff's damages, but does not imply the invalidity of the convicted charges. Finally, the allegation that the plaintiff is seeking "post-conviction relief" for his convictions concerns conduct that allegedly occurred after his encounter with Morales had ended. Absent is any allegation that the named defendants or the city had any role in the later-occurring conduct that resulted in the plaintiff's convictions.

The plaintiff's amended complaint alleges claims for unlawful arrest and detention, in violation of his Fourth Amendment rights, arising out of the plaintiff's encounter with Morales. The plaintiff's convictions, as alleged in his amended complaint, involve conduct, and possibly actors, wholly separate and distinct from the plaintiff's encounter with Morales. Thus, the plaintiff's § 1983 claims regarding his encounters with Musick and Morales are not barred by the rule in *Heck*.

### 2. DENIAL OF THE RIGHT TO COUNSEL

Count 4 of the plaintiff's amended complaint alleges that pursuant to city policy, the plaintiff was denied access to counsel and questioned without

first being advised of his *Miranda* rights, which, according to the plaintiff, violates his Fifth, Sixth, and Fourteenth Amendment rights. Filing 7 at 16. The defendants argue that the plaintiff's allegations fail to state a claim upon which relief may be granted. Filing 10 at 7-11. In summary, the defendants argue that *Miranda* violations are not cognizable § 1983 claims, a Sixth Amendment right to counsel does not attach until a prosecution is commenced, and there is no allegation showing the existence of a city policy causing violation of the plaintiff's claimed rights.

In response, the plaintiff represents that he is willing to concede the defendants' argument and agree to dismissal of Count 4 in its entirety without prejudice. Filing 13 at 15. The defendants, however, do not agree to the plaintiff's condition of dismissal without prejudice. Filing 14 at 6. The Court agrees that Count 4 of the amended complaint should be dismissed. The plaintiff's amended complaint failed to allege facts indicating a violation of the plaintiff's Fifth, Sixth, or Fourteenth Amendment constitutional rights, or the existence of city policy that could cause a violation of the plaintiff's constitutional rights with respect to Count 4 of the amended complaint.

Regarding the plaintiff's Fifth Amendment claim, he alleged that while Morales had him pinned to the ground, Morales questioned the plaintiff without first providing a *Miranda* warning. Filing 7 at 8. Violation of the Fifth Amendment right against self-incrimination only occurs when one is compelled to be a witness against oneself in a criminal case. *Chavez v. Martinez*, 538 U.S. 760, 770 (2003). *Miranda* warnings are not a stand-alone constitutional right, but a means to prevent violation of the right against self-incrimination. *Id.* The plaintiff's allegation regarding Morales' failure to Mirandize him is insufficient to constitute a Fifth Amendment violation.

9

Regarding the plaintiff's Sixth Amendment claim, he alleged that while at jail, the plaintiff asserted his right to counsel, but was told "an attorney is a privilege, not a right," and thereafter, was questioned by the named defendants. Filing 7 at 10. There is no allegation regarding to whom the plaintiff made his demand for counsel, or who denied the plaintiff's demand. More important, however, is that the Sixth Amendment right to the assistance of counsel does not attach until a prosecution is commenced. *Rothgery v. Gillespie Cty.*, 554 U.S. 191, 198 (2008). Here, the plaintiff's demand for counsel was made prior to the commencement of his prosecution. The plaintiff's Sixth Amendment claim is without merit.

Regarding a claimed Fourteenth Amendment substantive due process claim, only conduct that shocks the conscience and is so brutal and offensive that it does not comport with traditional ideas of fair play and decency would violate substantive due process. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). The allegations in the plaintiff's amended complaint are nowhere close to the kinds of conduct necessary to constitute a substantive due process violation.

Regarding the plaintiff's claims against the city, the plaintiff asserts that the denial of his right to counsel was the result of city policy that resulted in practices intended to deny arrestees access to counsel. Filing 7 at 16. But municipal liability will not lie absent an underlying constitutional violation by an officer. *Royster v. Nichols*, 698 F.3d 681, 692 (8th Cir. 2012). Here, no underlying Fifth, Sixth, or Fourteenth Amendment constitutional violation by an officer has been alleged. The Court finds that the plaintiff's claims in Court 4 of the amended complaint should be dismissed for failure to state a claim upon which relief may be granted.

3. OFFICIAL CAPACITY CLAIMS

The defendants argue that because the City of Imperial is a named defendant, there is no need to sue the individual defendants in their official capacity. It is true that official capacity suits are "to be treated as a suit against the [governmental] entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Court noted that "[t]here is no longer a need to bring official-capacity actions against local governmental officials, for . . . local government units can be sued directly for damages." *Graham*, 473 U.S. at 167 n.14. However, the defendants have not cited this Court to any authority holding that a plaintiff is barred from suing individual defendants in their official capacity when the governmental unit is also sued.

The two cases cited by the defendants in support of their argument concern the dismissal of official capacity claims in matters where the plaintiff failed to allege the existence of a policy or custom that violated the plaintiff's constitutional rights. *See Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998); *Cronin v. Peterson,* 288 F.Supp.3d 970, 998-1000 (D. Neb. 2018). The official capacity claims regarding the individual defendants were dismissed because those claims were redundant of the dismissed municipal liability claims. The cited cases are not matters where the official capacity claims against individual defendants were dismissed, but the claims against the governmental unit remained.

*Graham* merely held that suits naming both a governmental unit and individual defendants in their official capacity were redundant, but that redundancy does not compel dismissal of a plaintiff's official capacity claims. *See Duggin v. City of Omaha,* No. 8:19-CV-453, 2020 WL 406361, at *2 (D. Neb. Jan. 24, 2020); *Chalepah v. City of Omaha,* No. 8:18-CV-381, 2019 WL 802094,

at *3 (D. Neb. Feb. 21, 2019); *Higgins v. Dankiw*, No. 8:08-cv-15, 2008 WL 5282925, at *5 (D. Neb. Dec. 18, 2008).

The Court acknowledges that the plaintiff's brief in opposition purports to concede "dismissal without prejudice" of the individual defendant's official capacity claims. Filing 13 at 16. It is entirely up to the plaintiff whether to amend his amended complaint to eliminate the official capacity claims. This Court declines to order the dismissal given the absence of authority requiring such.

IT IS ORDERED:

1. Defendants' motion to dismiss (filing 9) is granted in part and denied in part as set forth above.

2. This case is referred to the Magistrate Judge for case progression.

Dated this 28th day of February, 2020.

BY THE COURT:

John M. Gerrard
Chief United States District Judge